UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALVARO ALBANIL, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-486 |
| | § | |
| COAST 2 COAST, INC., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiffs' motion for conditional certification and notice to potential class members.  Dkt. 19.  Having considered the motion, the responses, the evidence of record, and the applicable law, the court is of the opinion that the motion be GRANTED.

I. BACKGROUND

This is a Fair Labor Standards Act ("FLSA") case involving overtime compensation.  The named plaintiffs are fifteen current and former laborers employed by defendants Coast 2 Coast, Inc., and its owner/president Jeffrey Wayne Taylor (collectively, "defendants").  Dkt. 19.  Defendants employed plaintiffs and others as "chippers," which plaintiffs defines as "individuals who received compensation from defendants for chipping away and removing hardened concrete for the benefit of defendants' customers."  *Id.*  Plaintiffs reside in Harris County and are employed through defendants' office in Pasadena, Texas. Dkt. 19.  Plaintiffs travel on a regular basis to perform on-site "chipping" services for clients at various locations throughout the country.  Dkts. 1, 2.  Plaintiffs sometimes travel to more than one worksite per day and sometimes stay overnight at worksites.  Dkts. 1, 2.  Defendants provide transportation for plaintiffs between worksites, to motels during

overnight stays, and back to Harris County; at times plaintiffs cross state lines during the course of this transportation.  Dkts. 1, 2.  Defendants admit that all of their chippers perform the same or similar duties as the named plaintiffs and receive pay similar to the named plaintiffs.  Dkt. 2. Defendants further admit that plaintiffs' experiences are typical to those of other chippers employed by defendants.  *Id.*

Defendants pay all of their chippers on an hourly basis.  *Id.*  Plaintiffs and other chippers regularly work in excess of forty hours per week while they are traveling. Dkts. 1, 2.  Defendants admit that they do not pay chippers overtime for hours worked in excess of forty per week, because defendants believe their chippers are exempt from overtime pay under the Motor Carrier Act exemption to the Fair Labor Standards Act, 29 U.S.C. § 213(b)(1).  Dkts. 2, 21.  Plaintiffs also allege that they are not paid for time spent attending mandatory safety meetings and traveling to, from, and between clients' worksites.  Dkts. 1, 19.

Plaintiffs filed this FLSA action on February 11, 2008, on behalf of themselves and other similarly situated chippers who worked for defendants without receiving overtime pay for hours worked over forty per week.  Dkt. 1.  Plaintiffs now move the court to grant conditional class certification to the group of "chippers" employed by defendants in the last three years, alleging that these employees are similarly situated because they have the same job duties and were denied overtime pay under the same company policy. Dkt. 19.  In their motion, plaintiffs request that the court notify other chippers employed by defendants of their right to join this lawsuit for claims of unpaid overtime compensation, claiming that some of them will opt in if they know of their rights. *Id.*  Finally, plaintiffs request that the court order defendants to disclose the names and last known addresses of all employees within the conditionally certified class, for the purpose of facilitating delivery of any court-authorized notice.  Defendants filed a response in opposition, arguing that

defendants have not violated the FLSA, the proposed class is not "similarly situated," and plaintiffs have not shown that other chippers desire to opt in.   Dkt. 21.   Plaintiffs replied.   Dkt. 24.

## II. ANALYSIS

### A. The Legal Standard

Section 207(a) of the FLSA requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours.   29 U.S.C. § 207(a).   Section 216(b) creates a cause of action against employers who violate the overtime compensation requirements. 29 U.S.C. § 216(b). Section 216(b) also permits an employee to bring suit against an employer on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b).   Employees who wish to participate in a § 216(b) collective action must affirmatively "opt in" by filing with the court a written consent to become a party.  *Id.*  The "opt-in" procedure of § 216(b) illustrates its "fundamental, irreconcilable difference" from a class action under Federal Rule of Civil Procedure 23(c); in a Rule 23 proceeding, persons within the class description are automatically considered class members and must "opt out" of the suit if they do not wish to participate.  *Lachappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

Although the Fifth Circuit has declined to adopt a specific test to determine when a court should certify a class or grant notice in a § 216(b) action, most federal courts (including this court) have adopted the *Lusardi* test when deciding these issues.  *See Mooney v. Aramco Servs. Co.*  54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds*, *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91, 123 S.Ct. 2148 (2003) (discussing the test applied in *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D.N.J. 1987), declining to adopt a specific standard, and finding no abuse of discretion where district court applied the *Lusardi* test); *Badgett v. Texas Taco Cabana, L.P.*, No. H-05-3624, 2006

WL 2934265, at *1--2 (S.D. Tex. Oct. 12, 2006).  Under the *Lusardi* test, a district court approaches the question of whether the potential plaintiffs are "similarly situated" through a two-stage analysis. *Mooney*, 54 F.3d at 1213.

The two stages of the *Lusardi* test are the "notice stage" and the "decertification stage." *Badgett*, 2006 WL 2934265, at *1.   At the notice stage, the court makes a decision, usually solely based on the pleadings and any submitted affidavits, whether to certify the class conditionally and give notice to potential class members. *Id.*; *Mooney*, 54 F.3d at 1213.  The decision is made using a "fairly lenient standard," because the court often has minimal evidence at this stage of the litigation.  Thus, notice stage  analysis typically results in conditional certification of a representative class. *Badgett*, 2006 WL 2934265, at *1.  At the notice stage, "courts appear to require nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan . . . ." *Mooney*, 54 F.3d at 1214 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988), *aff'd in part and appeal dismissed in part*, 862 F.2d 439 (3d Cir. 1988), *aff'd and remanded*, 493 U.S. 165, 110 S.Ct. 482 (1989)).  Notice does not issue unless the court conditionally certifies the case as a collective action. *Maynor v. Dow Chem. Co.*, No. G-07-504, 2008 WL 2220394, at *6 (S.D. Tex. May  28, 2008).  If the district court conditionally certifies a class and authorizes notice, putative class members are notified of their opportunity to opt in as plaintiffs under § 216(b). *Mooney*, 54 F.3d at 1214.  The action then proceeds as a representative action during discovery. *Badgett*, 2006 WL 2934265, at *1.  During the "decertification stage," the court reexamines the class, usually on motion by the defendant, after notice has issued, an opt-in period has concluded, and discovery is largely complete. *Id.* at *2.  If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the

4

class and dismisses the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the action to proceed. *Id.*

The instant case is at the notice stage. While the notice stage standard is lenient, it is not automatic. *Badgett*, 2006 WL 2934265, at *2. The plaintiff bears the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Id.* To establish this, the plaintiff must make a minimal showing that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor*, 2008 WL 2220394, at *6 (referencing *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007). A court may deny conditional certification and notice "if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). However, the court "need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Id.* (quoting *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007)). The remedial nature of the FLSA and § 216 "militate strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Intern., Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008).

**B. Discussion**

Plaintiffs recognize that they must provide the court with some evidence (a "reasonable basis") showing that the defendants subjected a group of similarly situated potential class members

to a "single decision, policy or plan" violating the provisions of the FLSA.  *Id.*  Plaintiffs concede

that some courts require evidence that at least some of the putative class members would wish to join

the lawsuit.  *Id.*  However, plaintiffs highlight the lenient standard used in the notice stage of *Lusardi*

analysis and the "minimal evidence" typically available in such a case before discovery has occurred.

*Id.*  Additionally, plaintiffs point out that courts routinely make "notice stage" decisions based solely

upon allegations in a complaint and its accompanying affidavits.  *Id.*  Plaintiffs assert that they have

provided more than enough evidence, in the form of both pay stubs and employee affidavits, to

support their minimal burden at the notice stage.  *Id.*

     The class that plaintiffs wish to have conditionally certified is the group of "chippers"

employed by defendants within the past three years.  Dkt. 19.  Plaintiffs estimate that this class

would comprise approximately sixty people.  *Id.*  Fifteen chippers had joined the suit as named

plaintiffs at the time of plaintiffs' motion.  *Id.*  Plaintiffs allege that all of defendants' chippers were

non-exempt employees under the FLSA, requiring the defendants to pay overtime compensation for

any hours worked in excess of forty per week.  Dkt. 19.  Plaintiffs highlight defendants' admission

that no chippers received overtime pay as indicative of a single compensation policy, applicable to

all chippers, that violated the FLSA.  *Id.* (citing Dkt. 12).

     Plaintiffs argue that all of defendants' chippers are similarly situated because they share

substantially identical job duties, traveling to customer worksites and chipping concrete away from

customers' equipment, and work hours, routinely more than forty per week, and none of them ever

received overtime pay for hours worked in excess of forty per week.  Dkt. 19.  Plaintiffs support

these allegations with affidavits from several chippers as well as pay stubs showing that chippers

worked more than forty hours in a week, yet received straight hourly pay.  *Id.,* Exs. 1–6.  Plaintiffs

note that defendants essentially concede the proposed class members are similarly situated in their

original answer; defendants admitted that the named plaintiffs and defendants' other chippers perform the same or similar duties, the experiences of the named plaintiffs are typical to those of the other chippers, and no named plaintiffs or chippers received any overtime pay.  Dkts. 12, 19.

Plaintiffs point to the affidavits filed with their motion as evidence that other chippers would be interested in receiving court-facilitated notice of this action and joining the lawsuit. Dkt. 19, Exs. 1–6.  In these affidavits, five current named plaintiffs and one unnamed plaintiff indicate knowledge of other chippers who would wish to join the suit if given the opportunity; some affidavits name potentially interested class members by first name only, while others provide both the first and last name of potentially interested chippers.  *Id.*  Plaintiffs also note that one chipper has already filed his consent to join the suit as an unnamed plaintiff.  *Id.*  Plaintiffs therefore request that the court, after granting  conditional certification, also grant court-facilitated notice to the group of chippers employed by defendants during the last three years.  *Id.*  Plaintiffs include with their motion a proposed notice and consent form to be used by the court for this purpose.  *Id.*, Exs. 7–8.  Because many potential class members speak only Spanish, plaintiffs have volunteered to hire a translator to create Spanish-language versions once a final version of the notice and consent form has been approved.  Plaintiffs propose that interested class members be allowed ninety days after the notice mailing to file their consents with the court.  Dkt. 19.

In their response, defendants admit that they never paid overtime to their chippers, but oppose conditional class certification, primarily on grounds that the chippers fall within the Motor Carrier Act exemption to the FLSA.  Dkt. 21.  Defendants argue that plaintiffs and other chippers were exempt from overtime pay, meaning that defendants' compensation policy for the chippers was not "in violation of the FLSA."  *Id.*  Defendants also assert that the plaintiffs' affidavits, because they

use "boilerplate language," are insufficient even to show the existence of a common pay policy for chippers.  *Id.*

Defendants explain that the Motor Carrier Act exemption, 29 U.S.C. § 213(b)(1), exempts from the overtime pay requirements of the FLSA "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  29 U.S.C. § 213(b)(1).  Section 31502 of Title 49 authorizes the Secretary of Transportation to establish qualifications and maximum hour requirements for employees of "motor carriers" and "motor private carriers" involved in interstate transportation of goods or passengers.  49 U.S.C. § 13501; 49 U.S.C. § 31502; *see also* Dkt. 21. Defendants claim that a "motor private carrier" is defined as "a person, other than a motor carrier, transporting property by commercial motor vehicle" in interstate commerce.  Dkt. 21 (citing 49 U.S.C. § 13102(14)).   Defendants also explain at length that the 2005 revisions to the statute changed the definition of "commercial motor vehicle" to require a weight of 10,001 pounds or greater.  Dkt. 21.  Defendant Coast 2 Coast claims to be a "motor private carrier" because its employees transport themselves and their work equipment across state lines in defendants' trucks. Dkt. 21.  Defendants claims that Coast 2 Coast's trucks, with all equipment included, weigh more than 10,001 pounds each.  *Id.*  Defendants claim that the chippers themselves were responsible for loading the trucks with equipment and driving them between job sites.  Dkt. 21.  In support of their theory, defendants cite a recent Department of Labor investigation into Coast 2 Coast's pay practices, which culminated in the Department of Labor's determination that defendants' "employees" were exempt from overtime pay under the Motor Carrier Act exemption.  *Id.*, Ex. 1.

In addition to their exemption arguments, defendants assert that the proposed group of plaintiffs are not similarly situated because "highly individualized fact inquiries" would be necessary

to determine whether each chipper "actually worked more than [forty] hours in a week and received overtime compensation." Dkt. 21.   Defendants also argue that plaintiffs have not shown enough evidence that other chippers wish to opt in to the lawsuit, again criticizing the plaintiffs' "boilerplate" affidavits and stating that "at best, the declarations identify six individuals who might be interested in joining this lawsuit." *Id.* Defendants argue that it is unlikely that any other chippers wish to opt in at this time, because only three people have opted in since the filing of the lawsuit. *Id.* In the event that the court does grant conditional certification, defendants argue that the court should limit the class to chippers employed in defendants' Pasadena, Texas, location during the last two years. Dkt. 21. Defendants note that the statute of limitations in an FLSA case is two years, except in cases of willful violations, for which the limitations period is three years. *Id.*; 29 U.S.C. § 255(a). Defendants argue that there is no evidence that they violated the FLSA willfully, so the court should restrict the potential class to a two-year period rather than the three-year period suggested by plaintiffs. Dkt. 21.

Plaintiffs filed a reply to address defendants' main arguments in opposition. Dkt. 24. Plaintiffs primarily respond to defendants' assertion of the Motor Carrier Act exemption, arguing that the presence or absence of an exemption to the FLSA is a summary judgment question at best. *Id.* Plaintiffs note that defendants have conceded they "maintained a practice of not compensating any chipper with overtime pay" and that all chippers perform the same or similar duties and regularly work in excess of forty hours per week. *Id.* As a result, plaintiffs claim, the question of whether an exemption applies is an ultimate issue in this suit and is ill-suited for determination at the conditional certification stage. *Id.* Plaintiffs argue that the question of whether an exemption applies would require discovery, which has not yet occurred. *Id.*

9

In support of their arguments, plaintiffs cite cases in which federal district courts granted conditional certification at the "notice stage," despite a defendant's assertion of the Motor Carrier Act exemption. *Id.* The court in *White v. MPW Industrial Services, Inc.*, held that the defendant could not overcome the plaintiff's satisfactory showing of similarly situated plaintiffs and a common pay policy merely by asserting an exemption to the FLSA. *White v. MPW Industrial Srvs., Inc.*, 236 F.R.D. 363 (E.D. Tenn. 2006). In *Aguayo v. Oldenkamp Trucking*, the defendant contended that its asserted Motor Carrier Act exemption precluded conditional certification, because it would require a fact-specific inquiry into whether the exemption applied to each class member. *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477, at *5 (E.D. Cal. Oct. 3, 2005). The court rejected the defendant's arguments and granted conditional certification, stating that all the plaintiff must do at the notice stage is make substantial allegations, supported by declarations, that the plaintiffs and prospective class members were similarly situated and victims of a common pay policy. *Id.* The court also noted that defendants bear the burden of proving exemptions under the FLSA, and such exemptions are construed narrowly. *Id.*

Plaintiffs also challenge defendants' suggestion that the class should be limited to chippers employed by defendants in the prior two years. Plaintiffs note that courts in the Southern District of Texas have held that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; holding otherwise would require the plaintiff to prove willfulness without the benefit of discovery. Dkt. 24 (citing *Lopez v. Sam Kane Beef Processors, Inc.*, No. CC-07-335, 2008 WL 565115, at *2 (S.D. Tex. Feb. 29, 2008); *Foraker v. Highpoint S.W. Servs., L.P.*, No. H-06-1856, 2006 WL 2585047, at *5 (S.D. Tex. Sep. 7, 2006); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003)).

1.  Conditional Class Certification

At the "notice stage" of *Lusardi* analysis, plaintiffs' burden is light, because discovery has not yet occurred.   Plaintiffs simply must make, through their pleadings and any affidavits, "substantial allegations that putative class members were together the victims of a single decision, policy or plan . . . ." *Mooney v. Aramco Servs. Co.*  54 F.3d 1207, 1214 (5th Cir. 1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91, 123 S.Ct. 2148 (2003)). Plaintiffs accomplish this via a minimal factual showing that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist;  (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Maynor v. Dow Chem. Co.*, No. G-07-504, 2008 WL 2220394, at *6 (S.D. Tex. May  28, 2008).

Plaintiffs have met this burden, with some assistance from defendants.  Defendants admitted that all chippers are subject to a common pay policy, in that no chippers have ever received overtime pay for hours worked over forty per week.  The existence of fifteen named plaintiffs and at least three unnamed plaintiffs clearly establishes that "aggrieved individuals" exist; this is not a case in which a lone plaintiff complains of an individualized instance.  Plaintiffs have also provided at least a minimal basis for their assertions that other chippers would wish to join the lawsuit if they knew of it; while plaintiffs' affidavits do contain some "boilerplate" language, they specifically name chippers who were known by the declarants to have worked overtime without being paid at an overtime rate.  Because discovery has not yet occurred at the notice stage, affidavits are a perfectly acceptable method of proof.  *See Mooney*, 54 F.3d at 1214.

Defendants admitted in their original answer that the named plaintiffs and defendants' other chippers perform the same or similar duties, all chippers regularly work over forty hours per week,

11

and the experiences of the named plaintiffs are typical to those of the other chippers.  Defendants nevertheless argue that the putative class is not similarly situated because "highly individualized" fact inquiries would be necessary to determine whether all class members "worked more than [forty] hours in a week and received overtime compensation."  Dkt. 21.  The court does not need to determine whether any chipper received overtime pay, because defendants admitted that they never paid overtime to their chippers.  Nor would the fact that different chippers worked different amounts of overtime hours preclude a determination that the group as a whole is similarly situated with regard to defendants' universal refusal to pay them overtime.  The court "need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."  *Maynor*, 2008 WL 2220394, at *6.  Plaintiffs' pleadings and affidavits, stating that they did in fact work more than forty hours per week, are enough to provide the minimal factual showing required at the notice stage.

Defendants' assertion of the Motor Carrier Act exemption does not overcome plaintiffs' establishment of a "similarly situated" group of employees and a common pay policy applicable to all of them.  The application of the Motor Carrier Act exemption goes to the merits of whether the chippers are exempt from overtime pay.  Thus, defendants' assertion of an exemption, alone, is an insufficient basis for denying conditional certification and notice.  *See Foraker v. Highpoint S.W. Servs., L.P.*, No. H-06-1856, 2006 WL 2585047, at *4 n. 16 (S.D. Tex. Sep. 7, 2006) (holding that the defendants' assertion of an exemption, without more, is not enough to preclude conditional certification and notice).  The Motor Carrier Act exemption is construed narrowly against the employer, and the employer bears the burden of proving that it applies.  *Phillip v. Lesco Logistics, LLC*, No. H-06-3297, 2007 WL 1644039, at *2 (S.D. Tex. June 5, 2007) (citing *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392–94, 80 S.Ct. 453, (1960)).

In fact, defendants have not established clearly what the Motor Carrier Act exemption requires.  The statutes creating the exemption actually define the term "motor carrier" as "a person providing *motor vehicle* transportation for compensation" and the term "motor private carrier" as "a person, other than a motor carrier, transporting property by *motor vehicle* when (A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported, and (C) the property is being transported for sale, lease, rent or bailment or to further a commercial enterprise."  49 U.S.C. §§ 13102(14)–(15) (emphasis added).  "Motor vehicle" is defined in broad terms and does not include any minimum weight requirement.  49 U.S.C. § 13102(16).  Moreover, these sections do not include, as defendants suggest, any mention of a "commercial motor vehicle."

For the Secretary of Transportation to possess regulatory authority and for the Motor Carrier Act exemption to apply, the defendant "motor carrier must be engaged in interstate commerce, which requires either the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce."  *Brown v. AGM Entertainment, Inc.*, No. H-07-3439, 2008 WL 2704657, at *2 (S.D. Tex. July 3, 2008) (quoting *Barefoot v. Mid-America Dairymen, Inc.*, 826 F.Supp. 1046, 1049 (N.D.Tex. 1993) (citing *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976))).  The Department of Transportation has authority over drivers who regularly travel across state lines or who "reasonably are expected to do interstate driving."  *Id.* (quoting *Friedrich v. U.S. Computer Servs.*, 974 F.2d 409, 417 (3d Cir. 1992)).  The Department also has authority over employees whose activities have a "substantial direct effect" on the safety of motor vehicle operation in interstate commerce, but only if the character of the employee's activities involves safety at more than a de minimis level.  *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674-75, 67 S.Ct. 931 (1947).  However, an employee does not fall within the Motor Carrier Act

13

exemption if his work affecting highway safety is only "trivial, casual, occasional and insubstantial." *Hopkins v. Texas Mast Climbers, L.L.C.*, No. H-04-1884, 2005 WL 3435033, at *5 (S.D. Tex. Dec. 14, 2005) (citing *Wirtz v. Tyler Pipe and Foundry Co.*, 369 F.2d 927, 930 (5th Cir. 1966); *Mitchell v. Meco Steel Supply Co.*, 183 F. Supp. 777, 779 (S.D. Tex. 1956)).

Defendants bear the burden of proving that the chippers fit within this exemption, and the burden has not been met.  Defendants submitted an affidavit containing an allegation that a chipper drove one of defendants' vehicles and a highly redacted portion of a Department of Labor report in support of their position that the exemption applies. However, defendants admit in their response that each chipper work crew "is led by a foreman, who . . . does the majority of the driving."  *See* Dkt. 21, Ex. 1.  Likewise, defendants provide conclusory statements regarding the individual chipper's safety responsibilities.  Based on the current record, and without having provided plaintiffs some opportunity for discovery, a conclusive determination that the exemption applies, or does not, would be premature.

### 2.  Scope of the Class

Plaintiffs allege that defendants willfully violated the FLSA. Therefore, plaintiffs request that the court conditionally certify a class including all chippers employed by defendants in the last three years.  Dkt. 19.  Defendants argue that the class should include employees within only the last two years, because the plaintiffs have not yet proved a willful violation.  Dkt. 21.

The statute of limitations in an FLSA case is two years, except in cases of willful violations, for which the limitations period is three years. 29 U.S.C. § 255(a).  The well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness without the benefit of discovery.  *Lopez*

*v. Sam Kane Beef Processors, Inc.*, No. CC-07-335, 2008 WL 565115, at \*2 (S.D. Tex. Feb. 29, 2008); *Foraker*, 2006 WL 2585047 at \*5; *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003)).

For these reasons, the court GRANTS plaintiffs' motion to conditionally certify the class of "chippers" employed by defendants as follows:

> All current and former hourly-paid workers who worked for Coast 2 Coast, Inc., performing concrete removal work, between June 16, 2005, and the present.

### 3.  Notice to the Class

The court also GRANTS plaintiffs' motion for court-authorized notice to issue to the conditionally certified class.  The court orders that counsel confer and submit an agreed proposed notice and consent form for the court's consideration, within ten days of the date of this opinion and order.

Additionally, plaintiffs assert that some potential class members cannot speak or read the English language.  Plaintiffs suggest that the notice and consent forms should be translated into Spanish for the benefit of these potential plaintiffs, and the court agrees.  To ensure that the notice is adequate for all potential class members, the court directs that, once the court approves the notice and consent forms, plaintiffs' counsel arrange for preparation of Spanish-language versions, obtain defendants' counsel's approval of those versions, and mail the English and Spanish versions simultaneously to potential class members, giving them the option to execute the Spanish version of the consent form.  Potential class members will have sixty days after the date the notices are mailed to return their consent forms to this court, thereby consenting to representation in the instant lawsuit.

4.  Discovery

Plaintiffs request that defendants be required to provide, in a usable electronic form, the names and last known addresses of those included in the group to receive notice of this suit.  Dkt. 19.  Plaintiffs also request that the person who prepares this information for defendants sign an affidavit attesting to the completeness of the list.  *Id.*  Defendants do not object.

Thus, the court GRANTS plaintiffs' request that defendants produce the names and last known addresses of all current and former hourly-paid workers who worked for Coast 2 Coast, Inc., performing concrete removal work between June 16, 2005, and the present.  The court orders defendants to produce this information in a usable electronic form within twenty (20) days of the date this memorandum opinion and order is filed.  The court also orders the preparer of this information to complete the affidavit requested by plaintiffs at Dkt. 19, Ex. 9.

### III. CONCLUSION

The court GRANTS plaintiffs' motion to conditionally certify the class of all current and former hourly-paid workers who worked for Coast 2 Coast, Inc., performing concrete removal work, between June 16, 2005, and the present.  The court also GRANTS plaintiffs' request for notice to issue to the conditionally certified class. The court also GRANTS plaintiffs' request for discovery of the names and last-known addresses of all current and former hourly-paid workers who worked for Coast 2 Coast, Inc., performing concrete removal work, between June 16, 2005, and the present.

The court ORDERS defendants to produce names and addresses in an electronic format no later than twenty days from the date this order is filed.

The court ORDERS the parties to submit an agreed proposed notice and consent form for the potential class members within ten days of the date of this opinion and order.

It is so ORDERED.

Signed at Houston, Texas on November 17, 2008.

_____

Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY